IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARILYN SMITH, | : | |
| Plaintiff | | |
| | : | |
| | : | |
| vs. | : | CIVIL NO. 1:CV-09-0413 |
| | : | |
| DOD DLA DDSP, | : | |
| ROBERT M GATES, | | |
| JO ANN SCHOPMAN, | : | |
| COMPONENT DDC POC, | | |
| Defendants | : | |

*M E M O R A N D U M*

I.    *Introduction*

Plaintiff, Marilyn Smith, filed this action pro se, essentially alleging racial, age and disability-related discrimination arising from her probationary employment with the Defense Logistics Agency (DLA) at the Defense Distribution Depot Susquehanna, Pennsylvania (otherwise known as "Defense Depot Susquehanna, Pennsylvania" or "DDSP").  DDSP is a facility under the Defense Distribution Center (DDC), a part of DLA, in turn a part of the Department of Defense (DOD).  Plaintiff has named as defendants "DOD DLA DDSP" as a single entity; Robert M. Gates, the Secretary of Defense; JoAnn Schopman, the point of contact (POC) for employment matters in the DDC; Kenneth McDowell, a supervisory distribution facilities specialist; Carrie Lemelle, a coworker of Plaintiff; Bryan Ward, a DDSP supervisor; Andrew Simpson, another DDSP supervisor;

Claire Stealy; Greg Palese, a DDSP supervisor; Tracy Joynt; Debra Johnson; Cathy Sheely; and Scott Stada.[1]

We granted Plaintiff in forma pauperis status. On June 16, 2009, upon an initial screening of her several complaints and her motion to file another amended complaint, we dismissed some claims and allowed the following ones to proceed: (1) a racial discrimination claim under Title VII, but only against Secretary Gates; (2) a disability claim based upon jaundice, under the Rehabilitation Act (RA), 29 U.S.C. § 791, but against only defendant Gates; (3) an age discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, but against only defendant Gates; (4) a First Amendment retaliation claim for discharging Plaintiff after she filed a grievance against Carrie Lemelle, her coworker, but only against the individual defendants Ward, Simpson, Stada, Palese, Johnson and Schopman; (5) a retaliation claim under the Pennsylvania Constitution, based on the same allegations supporting the First Amendment claim, also against only defendants Ward, Simpson, Stada, Palese, Johnson and Schopman; and (6) a claim under Pennsylvania's statutory prohibition on discrimination on the basis of race, age and disability against all defendants except Claire Stealy. As to Stealy, we dismissed her from the action as no allegations had been made against her.

We are considering the defendants' motion to dismiss and their motion for summary judgment. In both motions, the defendants contend that the only claims Plaintiff is entitled to adjudicate on the merits in this case are federal claims of employment discrimination based on national origin and EEO retaliation in the refusal to rehire her in March 2008 and in her May 2008 removal from the employment certification list. On

---

[1] Plaintiff also named "Component DDC POC" as a defendant, but the defendants point out there is no such entity.

2

these claims, the defendants argue in their summary-judgment motion there is no evidence that Plaintiff was discriminated against on the basis of national origin or because she had exercised her EEO rights. In their motion to dismiss, the defendants argue that the federal constitutional claim and the state constitutional and statutory-discrimination claims are barred because a federal employee challenging workplace discrimination is limited to her rights under federal employment-discrimination statutes and the Civil Service Reform Act. Additionally, Plaintiff cannot pursue her federal employment-discrimination claims (other than, as noted above, her claims for the March 2008 refusal to hire and the May 2008 removal from the employment certification list) because she failed to properly exhaust her administrative remedies on those claims.

Upon review of the parties's positions, we agree with the defendants, but differ slightly in our reasoning for granting summary judgment.

II.      *Standards of Review*

On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, __ F.3d __, __, 2010 WL 715562, at *2 (3d Cir. 2010)(quoted case omitted). "[T]he general rule [is] that a motion to dismiss for failure to state a claim is to be evaluated only on the contents of the pleadings." *Id.* at __, 2010 WL 715562, at *7. However, there are exceptions to that rule, and one is for matters of public record. On a motion to dismiss, we can consider matters of public record, even though they are outside the pleadings. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006). In that regard, agency documents issued in connection with administrative proceedings dealing with employment-discrimination claims qualify as public records.

*See EEOC v. Bimbo Bakeries USA, Inc.*, No. 09-1872, 2010 WL 598641, at *1 n.2 (M.D. Pa. Feb. 27, 2010); *Mandel v. M&Q Packaging Corp.*, No. 09-42, 2009 WL 2579308, at *3 (M.D. Pa. Aug. 18, 2009); *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 802-03 (8th Cir. 2002)(in deciding a motion for judgment on the pleadings, observing that "district courts regularly look upon EEOC charges as matters of public record"). We will thus look to the agency filings made in connection with Plaintiff's discrimination claims in resolving the defendants' motion to dismiss.

As for summary judgment, we should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

III.    *Background*

The defendants' summary-judgment record and a few of Plaintiff's submissions establish the following background, although we base it mostly on the defendants' evidence, which Plaintiff has not rebutted.

Plaintiff was a probationary employee for DLA as a Wage Grade 5 Materials Handler when she was terminated, effective May 5, 2007. The termination letter, dated April 30, 2007, stated the reason as "quarreling or inciting to quarrel" with a coworker, defendant Carrie Lemelle. It also informed her that if she believed sex, race, age, disability or national-origin discrimination was the reason for her discharge, she could file a discrimination complaint and that the complaint had to be "communicated" to the EEO Human Services Officer within forty-five days of her receipt of the termination letter. (Doc. 28, CM/ECF pp. 26-27). Before her discharge, Plaintiff had written a letter, dated

January 16, 2007, complaining to defendant Simpson about Lemelle's treatment of her in the workplace. (Doc. 34, Pl.'s Opp'n Br. to Summ. J. Mot., ¶¶ 2 and 3 and Ex. 1).

According to a DLA memorandum on Plaintiff's "EEO Complaint History," dated July 9, 2008, Plaintiff contacted the DDSP EEO counselor on May 7, 2007, about her discharge, raising the issue of sex, race and color. According to this memorandum, an EEO pre-complaint mediation was held on August 8, 2007. (Doc. 28, CM/ECF p. 95). On the same day, Plaintiff signed a document indicating she wished to discontinue the pre-complaint procedure and acknowledging this meant she could not pursue litigation over her discharge. (Doc. 27, CM/ECF p. 35).

Plaintiff later applied for two jobs at DLA/DDSP. The first one was as a Materials Handler. By way of a notice, dated January 12, 2008, she was informed she had not been selected for that position. (Doc. 27, CM/ECF p. 37). The second job was as a Distribution Process Worker, under Vacancy Announcement DDSP-08-175030, dated March 3, 2008. (Doc. 29, CM/ECF p. 21; doc. 27, CM/ECF pp. 7-8). On March 18, 2008, Smith was sent a notice that she had not been selected for that position either. (Doc. 27, CM/ECF p. 66, the agency's June 5, 2008, letter-notice re claims that would proceed).

On March 28, 2008, Smith sought EEO counseling regarding her May 2007 termination, which was docketed as Case No. DLAN-08-0760. (Doc. 27, CM/ECF pp. 32-33). On April 18, 2008, Plaintiff filed a Formal EEO Complaint regarding her May 2007 termination. (Doc. 27, CM/ECF pp. 24-30).[2] She gave her national origin as a United States citizen as the reason she was discriminated against. (*Id.*, p. 24). She appears to have also grounded the claim on an improper firing based on her quarreling with her

---

[2] The Final Agency Decision, dated February 10, 2009, says it was April 21. The discrepancy is not material.

coworker Lemelle. (*Id.*, p. 25). Plaintiff later amended the complaint to charge that she had been harassed at the August 8, 2007, pre-complaint mediation, (*id.,* p. 27), that her January 12, 2008, non-selection as a material handler was improper, (*id.*, p. 36), that defendant Simpson had defamed her in connection with her May 2007 termination, (*id.*, p. 27), and that her March 18, 2008, non-selection was improper. (Doc. 27, CM/ECF pp. 66-68). All of the claims were grounded in national origin discrimination and retaliation for prior EEO activity. (*Id.*).

By letter dated May 28, 2008, Smith was subsequently removed from the certification list of eligible employees for Distribution Process Worker. (Doc. 27, CM/ECF p. 66; doc. 29 CM/ECF p. 35). The reason for removal was the selecting office's objection based on Plaintiff's "previous conduct within the same agency." (Doc. 27, CM/ECF p. 66; see also doc. 29, p. 35). Plaintiff amended her EEO complaint to challenge this decision. (Doc. 27, CM/ECF pp. 66-68).

The June 5, 2008, letter-notice advised Plaintiff that the agency had made the following determinations regarding her claims. It would not be adjudicating her May 2007 termination claim because it had already been processed in 2007, culminating in the August 2007 mediation where Plaintiff agreed to discontinue her claim. In support, the agency cited 29 C.F.R. § 1614.107(a)(1), which provides that the agency shall dismiss a complaint if it states a claim already decided by the agency.[3] Alternatively, assuming that the claim had been presented for the first time when Plaintiff contacted the agency on March 27, 2008,[4] the agency decided it was untimely because §

---

[3]    The regulations governing a federal employee's administrative remedies for an employment-discrimination claim are set forth in 29 C.F.R. §§ 1614.101-1614.607.

[4]   The record here indicates it was March 28, but the discrepancy is immaterial.

1614.105(a)(1) required Plaintiff to contact the EEO counselor within forty-five days of the discriminatory act. (Doc. 27, CM/ECF p. 67).

The agency would also not be adjudicating her claim contesting her January 12, 2008, non-selection for the materials-handler position because the March 27 initial contact on that claim was also untimely, coming more than forty-five days after the discriminatory act. In support, the agency cited § 1614.107(a)(2), requiring dismissal of a complaint not meeting the time deadline in § 1614.105(a)(1). (Doc. 27, CM/ECF p. 68).[5] The agency also rejected the harassment claim regarding the August 8, 2007, mediation because Plaintiff had not alleged a harm to a condition of employment and hence had failed to state a claim as required by § 1614.107(a)(1). Additionally, § 1614.107(a)(8) required dismissal of a claim that expresses dissatisfaction with the processing of a previously filed claim. (*Id.*, p. 67).

The agency conducted an investigation of Smith's March 18, 2008, non-selection claim and her claim that she had been improperly removed from the certification list of eligible employees on May 28, 2008. We take some of the following language from paragraphs 16 through 42 of Defendants' statement of material undisputed facts. (We have reviewed the evidence submitted in support of the statements, and the statements are supported by the evidence. Plaintiff has not filed opposing evidence.)

Regarding Smith's March 18, 2008, non-selection claim, DLA/DDSP sought to hire a number of Distribution Process Workers via Job Announcement DDSP-08-175030. The "open period" was February 15, 2008, through February 21, 2008. (Doc. 29, CM/ECF p. 5 and following). To be considered, applicants had to be United States citizens. (Doc. 29., CM/ECF p. 5). Miyoshi Alexis Powell was the HR specialist involved

---

[5] These decisions were affirmed in the Final Agency Decision of February 10, 2009. (Doc. 27, CM/ECF pp. 9-10).

in the processing of this job announcement, and the processing was done using OPM qualification standards and the Delegated Examination Operating Handbook. (Doc. 28, CM/ECF p. 77-79).

Candidates for the Distribution Process Workers job announcement were initially ranked, rated, and then referred by HR to the selecting official via a Certification of Eligibles. (Doc. 28, CM/ECF pp. 70, 77; doc. 29, CM/ECF p. 21). On March 3, 2008, the certification of eligibles was issued, a list consisting of 251 candidates.[6] (Doc. 27, CM/ECF p. 70; doc. 29, CM/ECF p. 21, 22, 23).

Defendant McDowell was the selecting official for the Distribution Process Worker positions. (Doc. 28, CM/ECF pp. 67-69, McDowell penalty-of-perjury declaration, given in connection with the agency investigation). Prior to making his selections, McDowell had twenty supervisors serve as interviewers, with the interviews occurring over three consecutive days. (*Id.*, p. 69). Each candidate was interviewed by one or two persons, with each candidate being asked identical questions. (*Id.*, pp. 169-70). The interviewers' job was to make recommendations for whether the candidates should be hired or not hired, with McDowell making the actual selections. (*Id.*, pp. 69-71).

From the list of 251 candidates, all were asked to interview, and 204 persons were actually interviewed. (Doc. 28, CM/ECF p. 70, McDowell Decl.; doc. 29, CM/ECF p. 28). Both Jeffrey Hoover and Vanessa Hoffman, a general supply specialist, interviewed Smith, along with other candidates, for the position of Distribution Process Worker. (Doc. 28, CM/ECF pp. 57-60, Hoover penalty-of-perjury declaration, given in connection with the agency investigation; doc. 28, CM/ECF pp. 62-65, Hoffman penalty-of-perjury declaration, given in connection with the agency investigation). Neither Hoover

---

[6] The defendants provided us with only three of the thirty-five pages of the certification list to protect the privacy of the other individuals.

nor Hoffman were aware of any prior EEO activity of Smith's. (*Id.*, pp. 58, 63). Neither Hoover nor Hoffman were directed or persuaded in any way not to recommend Smith, and neither discriminated against Smith in any way. (*Id.*, pp. 59-60, 64). In fact, Smith was recommended as a "hire" by the interviewers. (Doc. 28, McDowell Decl., CM/ECF p. 71).

After the interviews were completed, McDowell reviewed the candidates' resumes/applications and the interviewers' evaluation sheets. (*Id.*, pp. 69-70). McDowell also researched the backgrounds of the candidates to see if any of them had been prior employees of the agency and whether they were terminated for cause or resigned during an impending misconduct action. (*Id.*, pp. 70, 74-75 ). Based upon the Delegated Examination Operating Handbook, pages 809-815, Section D, (doc. 29, CM/ECF pp. 39-45), "Objecting to an Eligible," an agency may eliminate a candidate whose prior employment with the agency demonstrates suitability issues. (Doc. 28, McDowell Decl., CM/ECF pp. 72, 75). If an agency finds a candidate to be unsuitable, it may file an Official Form 62 (OF62) objecting to the candidate and seek the individual's removal from the certification list, which objection must be sustained by HR in order to remove the person from the list. (Doc. 29, CM/ECF pp. 41, 43).

Of the 251 persons on the certification list, McDowell objected to twenty-six candidates via OF62 objections as being unsuitable, with twenty-one objections being sustained. (Doc. 29, McDowell memo on the non-selection of Plaintiff, CM/ECF p. 28). Those candidates whose objections by McDowell were not sustained by HR were considered for employment. (Doc. 28, McDowell Decl., CM/ECF p. 75). McDowell did object to Smith's suitability via a OF62, and the objection was sustained by HR. (Doc. 28, CM/ECF pp. 74-75; doc. 29, pp. 36-37). McDowell objected to Smith's further consideration for selection due to her prior discharge for quarreling during her

probationary period and her prior incidences of quarreling.  In McDowell's view, the quarreling indicated a behavioral problem that made her unsuitable for reemployment. (Doc. 28, CM/ECF pp. 74-75).  Such action also violated DLA's policy against violence in the workplace.  (Doc. 29, CM/ECF pp. 36-37).  McDowell never met Smith and was not aware of her national origin or any EEO activity by her.  (*Id.*, pp. 68, 72).  McDowell did not discriminate against Smith.  (*Id.*, pp. 72-73).

One hundred and twenty-five candidates for the Distribution Process Worker position were actually offered jobs, and none of those candidates had objections sustained to their employment.  (*Id.*, p. 72).

On or about May 28, 2008, Smith was notified by letter that she had been removed from the certificate of eligible employees due to the agency's objection to her based upon her previous conduct with the agency.  (Doc. 29, CM/ECF p. 35).

As noted, the agency denied all of Plaintiff's claims in a Final Agency decision dated February 10, 2009.  In that decision, she was advised of her right to appeal to the EEOC or file a lawsuit in federal district court.  (Doc. 27, CM/ECF pp. 13-14).  Plaintiff filed this case on March 5, 2009.

III.     *Discussion*

A.     *Plaintiff's Constitutional and State-Law
Discrimination Claims Are Not Viable*

As noted, we allowed Plaintiff to proceed with the following claims: (1) a racial discrimination claim under Title VII; (2) a disability claim based upon jaundice, under the Rehabilitation Act (RA), 29 U.S.C. § 791; (3) an age discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 633a; (4) a First Amendment retaliation claim for discharging Plaintiff after she filed a grievance against

Carrie Lemelle, her coworker; (5) a retaliation claim under the Pennsylvania Constitution, based on the same allegations supporting the First Amendment retaliation claim; and (6) claims under "PHRA," the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951-63, Pennsylvania's statutory prohibition on discrimination on the basis of race, age and disability.

The defendants move to dismiss all the claims except the claims under Title VII, the RA and the ADEA, asserting that the latter three statutory provisions are the exclusive means for federal employees to redress employment discrimination claims. They also rely on *Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983), which declined to create a *Bivens* action for money damages for a federal employee when the claim could be redressed by way of the Civil Service Reform Act of 1978 (CSRA).[7]

We agree with the defendants in part. The federal statutory employment-discrimination laws are certainly the exclusive remedies for a federal employee, as long as the other claims are based on conduct covered by the statutes. *See Brown v. Gen. Services Admin.*, 425 U.S. 820, 832-33, 835, 96 S.Ct. 1961, 1968, 1969, 48 L.Ed.2d 402 (1976)(Title VII is the exclusive remedy for federal employees alleging job-related discrimination); *Spence v. Straw*, 54 F.3d 196, 202-03 (3d Cir. 1995)(the RA is the exclusive means for challenging disability-related discrimination in the federal workplace, dismissing an equal-protection claim); *Reiser v. New Jersey Air Nat'l Guard*, 152 F. App'x 235, 238-39 (3d Cir. 2005)(nonprecedential)(federal employee's New Jersey statutory employment-discrimination claim precluded by Title VII); *Diante v. Henderson*, 2000 WL 250225, at *10 (E.D. Pa.)(PHRA claim precluded by Title VII); *Harley v. Paulson*, No. 07-

_____

[7]  The Third Circuit notes that the CSRA is codified in various sections of Title 5 of the United States Code. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 794 (3d Cir. 2003).

3559, 2008 WL 5189931, at *3 and n.1 (D.N.J. Dec. 9, 2008)(Title VII is the exclusive remedy for federal employees for employment discrimination, dismissing a First Amendment retaliation claim alleging retaliation for invoking EEO procedures, a state employment-law claim and a state constitutional claim).

However, Plaintiff's First Amendment retaliation claim is not based on the facts giving rise to her employment-discrimination claims. Instead, it is based on her claim that certain of the individual defendants retaliated against her for writing the January 17, 2007, letter to defendant Simpson, a DDSP supervisor, complaining about Lemelle's work-related treatment of her. (See doc. 34, Pl.'s Opp'n Br. to Summ. J. ¶¶ 2 and 3, and Ex. P-1). In these circumstances, the Third Circuit has observed that a constitutional claim may not be barred if it "is not simply a disguised . . . discrimination claim." *Spence v. Straw*, 54 F.3d 196, 203 n.3 (3d Cir. 1995).[8]

In any event, Plaintiff fails to establish a First Amendment retaliation claim. "To prevail on a retaliation claim, a plaintiff must prove '(1) that [s]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *Miller v. Mitchell*, __ F.3d __, __, 2010 WL 935776, at *5 (3d Cir. 2010)(quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). Plaintiff has failed to establish the first element of the test, that she engaged in constitutionally protected activity. Plaintiff contends that when she wrote the letter, she was engaging in petitioning activity under the First Amendment, but an informal appeal internally addressed only to a supervisor is not petitioning activity protected by the First Amendment. *See Baranowski v. Waters*, No. 05-1379, 2008 WL 728366, at *25 (W.D. Pa. Mar. 18, 2008); *Miller v. Weinstein*, No. 06-0224, 2008 WL

---

[8] As for the CSRA, the defendants have cited *Bush*, but have not attempted to argue that the CSRA provided Plaintiff with a remedy, nor have they tried to argue that *Bush* excludes a *Bivens* remedy even for a probationary employee such as Smith.

4279817, at *20 (W.D. Pa. Sept. 12, 2008), aff'd, __ F. App'x __ (3d Cir. 2009) (nonprecedential)   Hence, this claim cannot proceed.[9]  We turn now to the federal statutory employment-discrimination claims.

In their motion to dismiss, the defendants argue that the Title VII, RA, and ADEA claims should be dismissed as against all defendants except Robert M. Gates, the Secretary of Defense, because only the head of the agency can be named as a defendant on these claims.  We agree, having said the same in our screening order of June 16, 2009, citing *Adams v. United States Equal  Employment Opportunity Comm'n*, 932 F. Supp. 660, 664 n.3 (E.D. Pa. 1996), and we will dismiss these claims as against all defendants except defendant Gates.

The defendants also argue in their dismissal motion that Plaintiff's May 2007 termination claim and her January 2008 non-selection claim should be dismissed because Plaintiff failed to properly exhaust her administrative remedies on these claims.  All plaintiffs must exhaust their administrative remedies on Title VII and RA claims before seeking judicial relief.  *See Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997)(Title VII); *Spence v. Straw*, 54 F.3d 196, 201 (3d Cir. 1995)(RA).  We agree with the defendants that these Title VII and RA claims must be dismissed for Plaintiff's failure to exhaust administrative remedies.

As noted, the regulations governing a federal employee's administrative remedies for an employment-discrimination claim are set forth in 29 C.F.R. §§ 1614.101-

---

[9]   As to Plaintiff's Pennsylvania constitutional claim, in Art. I, § 20, the Pennsylvania Constitution protects petitioning activity.  In interpreting the provisions of the state Constitution, the Pennsylvania Supreme Court freely deviates from the approach of the federal courts interpreting federal counterparts to state constitutional provisions.  *See, e.g. Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331 (1986).  Assuming that Plaintiff would have a state constitutional claim in the instant circumstances, we have found no state cases contrary to the federal approach and will dismiss the state constitutional claim on the same reasoning employed in rejecting the First Amendment claim.

1614.607.  The regulations cover Title VII and RA claims.  § 1614.103(a).[10]  Before filing an administrative complaint, an employee with a claim must first consult informally with an EEO counselor and do so "within forty-five days of the date of the matter alleged to be discriminatory . . . ."  The employee can then file an administrative complaint with the agency, a complaint that has to generally describe the action or practice she is challenging.  § 1614.106(a) and (c).

The agency can dispose of a complaint in several ways.  Under § 1614.107(a)(1), it can dismiss a complaint that fails to state a claim on the merits.  Under § 1614.107(a)(2), it can dismiss a complaint not meeting the time deadline set forth in § 1614.105(a)(1).  Upon "final action" by the agency, the employee can appeal to the EEOC or file a lawsuit.  § 1614.110(a) and (b).  If no appeal to the EEOC is taken, a lawsuit must be filed within ninety days after the final agency action, or within 180 days of the filing of the administrative complaint if no agency action was taken.  29 C.F.R. § 1614.407(a) and (b).

Here, as the defendants point out, Plaintiff failed to properly exhaust her administrative remedies as to any Title VII,  RA, or EEO retaliation claim based on either her May 2007 termination or her January 2008 non-selection.  As to her May 2007 termination, she did contact an EEO counselor but voluntarily discontinued the pre-complaint procedure.  Alternatively, when she renewed her claim in March 28, 2008, she failed to meet the forty-five day deadline for starting the process.  As to her January 12, 2008, non-selection claim, that was also untimely as her March 28, 2008, contact came more than forty-five days later.  Hence any Title VII, RA, or EEO retaliation claim based on these employment decisions will be dismissed for failure to exhaust administrative

_____

[10]  They also provide an administrative remedy for ADEA claims if a plaintiff chooses, an option we discuss below.

remedies. *See Gladden v. Geren*, No. 08-1180, 2009 WL 90355, at *3 (M.D. Pa. Jan. 14, 2009)(Title VII claim dismissed for failure to initiate the informal contact with an EEO counselor within forty-five days).

The defendants also move to dismiss any race, age and disability claims arising from Plaintiff's March 2008 non-selection and her May 2008 removal from the certification list, also on the basis that Plaintiff failed to exhaust these claims. We agree, as to the race and disability claims. The record shows that Plaintiff only presented claims of national origin and EEO retaliation. Under § 1614.106(c), a complaint has to generally describe the action or practice complained of. Hence any race or disability claims based on these employment decisions will be dismissed for failure to exhaust administrative remedies.[11]

We have disagreed with the defendants' exhaustion argument on the ADEA claim because the ADEA is different for federal employees. Unlike a state employee or an employee of a private entity, a federal employee is not required to pursue administrative remedies on an ADEA claim. Instead, she has two options. First, pursuant to 29 U.S.C. § 633a(c), she may go directly to district court. If she does, she must first give the EEOC "not less than thirty days' notice of [her] intent" to sue before she files the action, *id.* § 633a(c), and the notice must be filed with the Commission "within one hundred and eighty days after the alleged unlawful practice occurred." *Id.* Alternatively, she may pursue administrative remedies, but if she does so, must exhaust those remedies. *See Galante v. Cox*, No. 05-6739, 2006 WL 1371191, at *4-5 (E.D. Pa. May 16, 2006). *See also Erbe v. Potter*, No. 08-813, 2009 WL 427258, at *5 (M.D. Pa. Feb. 20, 2009)(a federal employee may pursue an ADEA claim directly in federal court or

---

[11] Nor do we believe that any investigation of the national origin or EEO retaliation claims would have led to an investigation of any race or disability claims. *See Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978).

may invoke administrative remedies)(citing *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 5, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991)).[12]

Hence failure to exhaust is not a bar to Plaintiff's ADEA claim. Additionally, the defendants have presented no other arguments why the ADEA claim should be dismissed. But we must note that a review of Plaintiff's several pleadings indicates that Plaintiff has not alleged sufficient facts in support of her ADEA claim. The claim is only made in the amended complaint (doc. 6), and Plaintiff only alleges there that her May 2007 termination was based on age. (Doc. 6, ¶ 1).[13] Before allowing this claim to proceed, we will require a fourth amended complaint setting forth sufficient facts in support of Plaintiff's ADEA claim. Plaintiff must allege the facts she believes shows that the agency discriminated against her based on age by terminating her in may 2007.

B. *Plaintiff Suffered No Employment Discrimination Based on National Origin or EEO Retaliation in Her March 2008 Non-Selection Claim and in Her May 2008 Claim for Her Removal From the Employment Certification List*

In moving for summary judgment on the March 2008 non-selection claim (a failure-to-hire claim), the defendants properly rely on the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff must establish the following prima facie case:

> (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position sought; (3) [s]he was rejected despite

---

[12] The regulations are consistent. Under 29 28 C.F.R. § 1614.105(b)(1), at the initial counseling session, the EEO Counselor must advise the employee of the option of bypassing administrative remedies on an ADEA claim and proceeding directly to court.

[13] We would not have normally allowed the claim to proceed without sufficient facts, see *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009), but thought the defendants' response to the complaint would allow us to resolve the claim. As things turned out, we were wrong.

> being qualified; and (4) under circumstances that raise an
> inference of discriminatory action, the employer continued to
> seek out individuals with qualifications similar to plaintiff's to fill
> the position.

*Waris v. Heartland Home Healthcare Services, Inc.*, 2010 WL 538054, at *2 (3d Cir.

2010)(per curiam)(nonprecedential)(citing *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797

(3d Cir. 2003)).

> Once the plaintiff presents a prima facie case of discriminatory
> hiring, the burden shifts to the employer to show that the
> action it took was not discriminatory. *Id.* If an employer
> presents a non-discriminatory reason for the decision not to
> hire, the burden shifts to the plaintiff to "present evidence
> contradicting the core facts put forward by the employer as
> the legitimate reason for its decision." *Kautz v. Met-Pro Corp.,*
> 412 F.3d 463, 467 (3d Cir. 2005). A plaintiff "must submit
> evidence which (1) casts sufficient doubt upon each of the
> legitimate reasons proffered by the defendant so that a
> factfinder could reasonably conclude that each reason was a
> fabrication; or (2) allows the factfinder to infer that
> discrimination was more likely than not a motivating or
> determinative cause of the adverse employment action." *See*
> *Fuentes v. Perskie,* 32 F.3d 759, 762 (3d Cir. 1994).

*Waris*, *supra*, 2010 WL 538054, at *2.

The defendants first argue that the record shows that Plaintiff has not

established a prima facie case. As noted, Plaintiff's claim is that she was not selected in

March 2008 for the job of distribution process worker because of her national origin as a

United States citizen. The defendants point to the fact that all the applicants for the

position had to be United States citizens so that Plaintiff cannot show that a non-citizen of

the United States was selected.

We agree no prima facie case has been established. If the persons

eventually hired had to be members of the "protected class" (and Plaintiff presents no

evidence that any were not), it defeats that aspect of the prima facie case requiring

Plaintiff to show "circumstances that raise an inference of discriminatory action" from

Plaintiff's rejection. This analysis applies equally to her claim that she was removed form the certification list in May 2008.

The defendants next argue that, even if Plaintiff had established a prima facie case on these claims, they have presented a non-discriminatory reason for her non-selection, her May 2007 termination for "quarreling or inciting to quarrel." We agree. We add that Plaintiff has not presented any evidence that would cast doubt on this explanation. We turn now to Plaintiff's Title VII retaliation claim.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008)(nonprecedential)(quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)).

The defendants move for summary judgment on this claim by arguing there is no evidence to show a causal connection between Plaintiff's EEO activity and the decisions not to select her in March 2008 and to remove her from the certification list in May 2008. They rely on the uncontested evidence showing that Hoover, Hoffman, and McDowell did not know about any EEO activity by Plaintiff. Hoover and Hoffman were the DDSP workers who interviewed her, and McDowell was the DDSP supervisor who made the selection of persons who would be offered the job from the interviewers' recommendations. The defendants argue that these individuals could not have acted to retaliate against protected activity they did not know about. We agree. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002)(First Amendment retaliation claim failed when there was no evidence that the commissioners of the defendant township knew about the plaintiff's protected activity, submission of an affidavit in support of

another police officer's lawsuit, before performing their supposed retaliatory conduct, suspending the plaintiff); *Iyer v. Everson*, 238 F. App'x 834, 837 (3d Cir. 2007)(per curiam)(nonprecedential) (Title VII retaliation claim failed when evidence showed that IRS counsel responsible for decision not to hire the plaintiff was unaware of the plaintiff's EEO activity); *Crosby v. UPMC*, No. 07-501, 2009 WL 735868, at *18 (W.D. Pa. Mar. 20, 2009)(ADA retaliation claim failed when there was no evidence that the defendant's officials knew about the plaintiff's protected activity, a workers'-compensation claim).

We add that there is no evidence that the decision not to hire Plaintiff in March 2008 and to remove her from the certification list in May 2008 was based on any improper motive. As the record shows, McDowell was the selecting official for the March 2008 opening. Before making his selections, McDowell had twenty supervisors serve as interviewers, including Hoover and Hoffman. The interviewers recommended the candidates who should be hired, and McDowell made the actual selections.

Hoover and Hoffman both interviewed Plaintiff, and both recommended that she be hired. As part of the process of making his selections, McDowell researched the backgrounds of the candidates, including any prior work history with the agency. Of the 251 persons on the certification list, McDowell objected to twenty-six candidates as being unsuitable, including Plaintiff, due to her prior discharge for quarreling during her probationary period and her prior incidences of quarreling. McDowell's objection to Plaintiff's selection was sustained by HR. McDowell, who had never met Smith, viewed the quarreling as indicating a behavioral problem that made her unsuitable for reemployment. Ultimately, 125 candidates for the Distribution Process Worker position were actually offered jobs, and none of those candidates had objections sustained to their employment.

We will issue an appropriate order. The order will dismiss all claims against all defendants but allow Plaintiff to file a fourth amended complaint on her age-discrimination claim concerning her termination in May 2007.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 30, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARILYN SMITH,                      :
        Plaintiff
                                    :

                                    :
        vs.                       CIVIL NO. 1:CV-09-0413
                                    :

DOD DLA DDSP,                   :
ROBERT M GATES,
JO ANN SCHOPMAN,             :
COMPONENT DDC POC,
        Defendants            :

*O R D E R*

AND NOW, this 30th day of March, 2010, it is ordered that:

1.  The defendants' motion (doc. 20) to dismiss is granted so that any Title VII, RA and ADEA claims are dismissed as against all the defendants except defendant Gates, the Secretary of Defense.

2.  The defendants' motion (doc. 20) to dismiss is also granted so that the following claims are dismissed: the First Amendment retaliation claim; the Pennsylvania constitutional retaliation claim; any claim under "PHRA," the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951-63; any Title VII, RA, or EEO retaliation claim based on either Plaintiff's May 2007 termination or her January 2008 non-selection; and any race, age and disability claims arising from Plaintiff's March 2008 non-selection and her May 2008 removal from the certification list.

3.  Plaintiff is granted twenty-one days from the date of this order to file a fourth amended complaint setting forth sufficient facts in support of her ADEA claim.  Plaintiff must allege the facts she believes shows that the agency discriminated against her based on age in terminating her in May 2007.  If she fails to file the amended complaint, this action will be dismissed.  Plaintiff must name only defendant Gates in the amended complaint but in support of her claim may refer to the actions of other persons.

4.  The defendants' motion (doc. 21) for summary judgment is granted, and the Clerk of Court shall enter judgment in favor of defendant Gates and against Plaintiff on her Title VII and EEO retaliation claims arising from her March 2008 non-selection claim and her May 2008 claim for removal from the employment certification list.


                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge